# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

THE ARC OF IOWA, et al.,

*Plaintiffs-Appellees,*

*v.*

KIMBERLY REYNOLDS, in her official capacity as Governor of Iowa; ANN LEBO, in her official capacity as Director of the Iowa Department of Education,

*Defendants-Appellants*,

ANKENY COMMUNITY SCHOOL DISTRICT, et al.,

*Defendants*.

---

On Appeal from the United States District Court
for the Southern District of Iowa (Case No. 4:21-cv-00264-RP)

---

## BRIEF FOR PLAINTIFFS-APPELLEES

---

Shefali Aurora
Rita Bettis Austen
AMERICAN CIVIL LIBERTIES
  UNION OF IOWA FOUNDATION
505 Fifth Avenue, Suite 808
Des Moines, IA 50309-2316
(515) 243-3988
shefali.aurora@aclu-ia.org
rita.bettis@aclu-ia.org

John A. Freedman
Anthony J. Franze
Tara L. Williamson
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
(202) 942-5000
john.freedman@arnoldporter.com
anthony.franze@arnoldporter.com
tara.williamson@arnoldporter.com

(additional counsel listed on next page)

Catherine Johnson
Cynthia A. Miller
DISABILITY RIGHTS IOWA
666 Walnut Street, Suite 1440
Des Moines, IA 50309
(515) 278-2502
cjohnson@driowa.org
cmiller@driowa.org


Shira Wakschlag
ARC OF THE UNITED STATES
1825 K Street, NW, Suite 1200
Washington, DC 20006
(202) 534-3708
wakschlag@thearc.org

Jim T. Duff
Thomas J. Duff
DUFF LAW FIRM, P.L.C.
4090 Westown Parkway, Suite 102
West Des Moines, IA 50266
(515) 224-4999
jim@tdufflaw.com
tom@tdufflaw.com

Steven L. Mayer
ARNOLD & PORTER
  KAYE SCHOLER LLP
10th Floor, Three Embarcadero Center
San Francisco, CA 94111-4024
(415) 471-3100
steve.mayer@arnoldporter.com

Louise Melling
Arijeet Sensharma
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2637
lmelling@aclu.org
asensharma@aclu.org

Susan Mizner
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
(646) 421-9387
smizner@aclu.org

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 8th Circuit Rule 26.1A, Plaintiff-Appellee The Arc of Iowa states that it has no parent corporation and that no publicly held corporation owns more than ten percent of its stock.

Appellate Case: 22-3338    Page: 3    Date Filed: 06/05/2023 Entry ID: 5283570

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ............................................................................. iv

INTRODUCTION ...........................................................................................1

STATEMENT OF THE CASE..........................................................................5

    A.   The Pandemic and Anti-Masking Debate ................................................5

    B.   Plaintiffs Sue to Enjoin Enforcement of Section 280.3's Masking
        Ban...................................................................................................7

    C.   The First Appeal .............................................................................10

    D.   The Proceedings on Remand .................................................................12

SUMMARY OF ARGUMENT ........................................................................14

STANDARD OF REVIEW .............................................................................16

ARGUMENT ...............................................................................................17

I.    THE DISTRICT COURT CORRECTLY HELD THE IDEA EXHAUSTION
     REQUIREMENT DOES NOT APPLY.........................................................17

    A.   Plaintiffs Need Not Exhaust Because They Sought and Obtained
        Relief That Is Not Available Under the IDEA .......................................17

    B.   The Essence of Plaintiffs' Claims Pertains to Equal Access to
        Public Schools, Not Students' Right to a Free and Appropriate
        Public Education.................................................................................22

        1.  The Gravamen of Plaintiffs' Claims Falls Outside the IDEA.............22

        2.  The Decisions State Defendants Cite Are Inapposite .........................25

II.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS HAVE
     STANDING.................................................................................................27

    A.   Defendants Do Not Dispute that Plaintiffs Have Suffered an
        Injury-In-Fact....................................................................................27

    B.   Plaintiffs Have Established Traceability ................................................28

    C.   Plaintiffs Have Established Redressability .............................................30

    D.   There Is a Live Case or Controversy......................................................34

    E.   Defendants Were on Notice of Plaintiffs' Requested and Awarded
        Declaratory Relief .............................................................................35

Appellate Case: 22-3338    Page: 4    Date Filed: 06/05/2023 Entry ID: 5283570

III.  THE DISTRICT COURT CORRECTLY GRANTED DECLARATORY
      RELIEF .............................................................................................38

    A.  The ADA and the Rehabilitation Act Reach Policies with
       Discriminatory Effects...............................................................38

    B.  Masking Can Be a Reasonable Modification Under Federal Law...........43

    C.  Reasonable Modifications Under Federal Law Need Not Comply
       with Section 280.31 ...................................................................47

CONCLUSION...........................................................................................51

CERTIFICATE OF COMPLIANCE.........................................................52

CERTIFICATE OF SERVICE ...................................................................53

Appellate Case: 22-3338     Page: 5     Date Filed: 06/05/2023 Entry ID: 5283570

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Albertson's, Inc. v. Kirkingburg,
527 U.S. 555 (1999)..................................................................................49, 50

Alberty v. U.S.,
54 F.4th 571 (8th Cir. 2022) ................................................................32

Alexander v. Choate,
469 U.S. 287 (1985)..........................................................................40, 41, 42

Am. Council of the Blind v. Paulson,
525 F.3d 1256 (D.C. Cir. 2008) .........................................................40

Arc of Iowa v. Reynolds,
24 F.4th 1162 (8th Cir. 2022) .......................................................11, 21

Arc of Iowa v. Reynolds,
33 F.4th 1042 (8th Cir. 2022) ...............................1, 11, 14, 34, 47, 48

Baker v. John Morrell & Co.,
382 F.3d 816 (8th Cir. 2004) .............................................................36

Barron v. S.D. Bd. of Regents,
655 F.3d 787 (8th Cir. 2011) .............................................................18

Boone v. Boozman,
217 F. Supp. 2d 938 (E.D. Ark. 2002).............................................46

Bowles v. Osmose Utilities Services, Inc.,
443 F.3d 671 (8th Cir. 2006) .............................................................36

Brennan v. Stewart,
834 F.2d 1248 (5th Cir. 1988) ...........................................................40

CEI v. NHTSA,
901 F.2d 107 (D.C. Cir. 1990)...........................................................32

Continental Insurance Company v. Daikin Applied Americas Inc.,
998 F.3d 356 (8th Cir. 2021) .............................................................16

iv

*Cooper v. Aaron*,
　358 U.S. 1 (1958) .................................................................48

*Davis v. Francis Howell School District*,
　138 F.3d 754 (8th Cir. 1998) ...........................................39, 40

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences*,
　804 F.3d 178 (2d Cir. 2015) .............................................48, 49

*DeBord v. Board of Education*,
　126 F.3d 1102 (8th Cir. 1997) .....................................38, 39, 40

*Dep't of Comm. v. New York*,
　139 S. Ct. 2551 (2019) .........................................28, 32, 33, 34

*Digital Recognition Network, Inc. v. Hutchinson*,
　803 F.3d 952 (8th Cir. 2015) ..................................................33

*Disabled in Action v. Bd. of Elections in the City of N.Y.*,
　752 F.3d 189 (2d Cir. 2014) ....................................................40

*Doe ex rel. K.M. v. Knox Cnty. Bd. of Educ.*,
　56 F.4th 1076 (6th Cir. 2023) .................................................24

*Doe v. CVS Pharmacy, Inc.*,
　141 S. Ct. 2882 (2021) ...........................................................40

*Doe v. CVS Pharmacy, Inc.*,
　142 S. Ct. 480 (2021) .............................................................40

*Doe v. CVS Pharmacy, Inc.*,
　982 F3d 1204 (9th Cir. 2020) .................................................40

*Doe v. Perkiomen Valley Sch. Dist.*,
　585 F. Supp. 3d 668 (E.D. Pa. 2022) .......................................24

*Durand v. Fairview Health Services*,
　902 F.3d 836 (8th Cir. 2018) ..................................................39

*E.T. v. Paxton*,
　19 F.4th 760 (5th Cir. 2021) ..................................................25

v

*Fry v. Napoleon Community Schools*,
    137 S. Ct. 743 (2017) .......................................................... 4, 18, 19, 22, 23, 24, 26

*Gorman v. Bartch*,
    152 F.3d 907 (8th Cir. 1988) ................................................................. 45

*Gustafson v. Cornelius Co.*,
    724 F.2d 75 (8th Cir. 1983) ................................................................... 32

*Herden v. U.S.*,
    726 F.3d 1042 (8th Cir. 2013) ............................................................... 32

*In re Rodriquez*,
    258 F.3d 757 (8th Cir. 2001) ................................................................. 26

*J.M. v. Francis Howell Sch. Dist.*,
    850 F.3d 944 (8th Cir. 2017) ............................................................ 20, 25

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905) ............................................................................... 46

*Liddell v. Special Admin. Bd. of the Transitional Sch. Dist.*,
    894 F.3d 959 (8th Cir. 2018) ............................................................ 28, 31

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................................... 30, 31

*Mark H. v. Lemahieu*,
    513 F.3d 922 (9th Cir. 2008) ................................................................. 40

*Mary Jo C. v. New York State & Local Ret. Sys.*,
    707 F.3d 144 (2d Cir. 2013) ................................................................. 47

*McWright v. Alexander*,
    982 F.2d 222 (7th Cir. 1992) ................................................................. 40

*Metzger v. Village of Cedar Creek, Nebraska*,
    370 F.3d 822 (8th Cir. 2004) ................................................................. 16

*Moore v. Kansas City Pub. Sch.*,
    828 F.3d 687 (8th Cir. 2016) ................................................................. 25

vi

*Nat'l Fed'n of the Blind v. Lamone*,
  813 F.3d 494 (4th Cir. 2016) ...................................................................40, 47, 48

*Nathanson v. Medical Coll. of Pa.*,
  926 F.2d 1368 (3d Cir. 1991) ................................................................................40

*Nelson v. Charles City Cmty. Sch. Dist.*,
  900 F.3d 587 (8th Cir. 2018) ..........................................................................20, 25

*Northshore Dev., Inc. v. Lee*,
  835 F.2d 580 (5th Cir. 1988) ................................................................................26

*Office of Senate Sergeant at Arms v. Office of Senate Fair
  Employment Practices*,
  95 F.3d 1102 (Fed. Cir. 1996) ..............................................................................50

*Olmstead v. L.C.*,
  527 U.S. 581 (1999) .............................................................................................45

*One Thousand Friends of Iowa v. Mineta*,
  364 F.3d 890 (8th Cir. 2004) ................................................................................34

*Perez v. Sturgis Public Schools.*,
  143 S. Ct. 859 (2023) .............................................................4, 15, 17, 18, 26, 27

*Robinson v. Kansas*,
  295 F.3d 1183 (10th Cir. 2002) ............................................................................40

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
  369 F.3d 113 (2d Cir. 2004) .................................................................................46

*Ruskai v. Pistole*,
  775 F.3d 61 (1st Cir. 2014) ..................................................................................40

*Sarasota Wine Mkt. LLC v. Schmitt*,
  987 F.3d 1171 (8th Cir. 2021) ..............................................................................27

*Seaman v. Virginia*,
  No. 3:22-cv-00006, 2022 WL 872023
  (W.D. Va. Mar. 23, 2022) ...............................................................................23, 24

*Simon v. E. Kentucky Welfare Rts. Org.*,
  426 U.S. 26 (1976) ...............................................................................................31

Appellate Case: 22-3338    Page: 9    Date Filed: 06/05/2023 Entry ID: 5283570

*Tennessee v. Lane*,
541 U.S. 509 (2004)................................................................41, 48

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys.*
*Project, Inc.*,
576 U.S. 519 (2015)......................................................................41

*U.S. Airways, Inc. v. Barnett*,
535 U.S. 391 (2002).............................................................48, 49, 50

*U.S. v. Georgia*,
546 U.S. 151 (2006)......................................................................48

*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021)...................................................................33

*Winfrey v. City of Forrest City, Ark.*,
882 F.3d 757 (8th Cir. 2018) ........................................................36

## Statutes and Regulations

29 U.S.C.
§ 794..........................................................................................41
§ 794(a) .....................................................................................41
§ 794(b)(1) .................................................................................48
§ 794(b)(2) .................................................................................48

42 U.S.C.
§ 12101(a) ..................................................................................42
§ 12101(b) ..................................................................................42
§ 12131(1)(A) .............................................................................48
§ 12131(2) ..................................................................................43
§ 12132.................................................................................41, 43

Iowa Admin. Code r.
281-41.503(1)..............................................................................19
281-41.507(1)(a) .........................................................................19
281-41.513(1)..............................................................................19

Appellate Case: 22-3338    Page: 10    Date Filed: 06/05/2023 Entry ID: 5283570

Iowa Code

    § 139A.8(2)(b) ...............................................................46
    § 139A.8(2)(c)...............................................................46
    § 139A.8(2)(d) ..............................................................46
    § 139A.8(2)(e) ..............................................................46
    § 280.31 ........................................................................1

28 C.F.R. § 35.130(b)(7).........................................................45

**Other Authorities**

Karla Soares-Weiser, Editor-in-Chief, Cochrane Library, *Statement on
    'Physical Interventions to Interrupt or Reduce the Spread of
    Respiratory Viruses' Review*, Cochrane (Mar. 10, 2023)...................................44

*Operational Guidance for K-12 Schools and Early Care and
    Education Programs to Support Safe In-Person Learning*, Ctrs. for
    Disease Control & Prevention ....................................................44, 45

Zeynep Tifekci, Opinion, *Here's Why the Science Is Clear That
    Masks Work*, N.Y. Times (Mar. 10, 2023) .........................................44

Appellate Case: 22-3338    Page: 11    Date Filed: 06/05/2023 Entry ID: 5283570

## INTRODUCTION

Section 280.31 of the Iowa Code prohibits Iowa schools from imposing masking requirements unless masking is required by "any other provision of law." Accordingly, this Court held in the prior appeal that if "federal law requires masks, Section 280.31 does not conflict with that law…." *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1045 (8th Cir. 2022).

On remand, the district court issued a narrow declaratory judgment stating that (1) Section 280.31's reference to "'other provision[s] of law'… includes Title II of the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act"; and (2) Section 280.31 "cannot be cited as the only basis to deny a student's request for reasonable modification or accommodation made under Title II of the ADA or section 504 of the Rehabilitation Act that includes requiring others to wear masks." Add.23-24, App.1046-47, R.Doc.114 at 23-24.[1] These holdings do nothing more than restate and implement this Court's ruling that Section 280.31 does not prohibit masking required by the ADA and the Rehabilitation Act.

Plaintiffs did not request, and the district court did not grant, an order requiring the school districts that Plaintiffs' children attend to accommodate their disabilities. Instead, the court merely interpreted Section 280.31 to free Iowa

---

[1] "Add.##" refers to Appellants' Addendum. "App.##" refers to the Joint Appendix.

1

districts to evaluate requests for reasonable modifications as required by these federal statutes, without coercion or threats from the State.

Defendant School Districts did not appeal the district court's order. But Governor Reynolds and Director Lebo ("State Defendants") did. On the one hand, State Defendants acknowledge—as they must, in light of this Court's prior ruling—that the statute's "other provision of law" safe harbor includes federal antidiscrimination statutes. Br. 32, 36. On the other hand, State Defendants simultaneously assert that reasonable modifications under these federal statutes "must still comply with applicable state law." Br. 48. Likewise, they assert that, under Section 280.31, "a mask mandate as a public health precaution can only be imposed by the Governor as a part of her emergency powers during a public health disaster, rather than by a school district" evaluating a reasonable modification request. Br. 18, 42-43, 47.

The latter argument contravenes both the text of Section 280.31 and this Court's prior ruling: if, under particular circumstances, a masking requirement is a reasonable modification under the ADA or the Rehabilitation Act, Section 280.31's savings clause ensures that the state law does not preclude schools from imposing that requirement.

State Defendants' appeal is based on two fundamental mischaracterizations. First, they mischaracterize what the district court did. State Defendants claim that

2

the district court's ruling "commands schools that find a mask mandate to be a reasonable modification to ignore the State's law prohibiting mandates." Br. 18. To the contrary, the district court expressly agreed with State Defendants "that section 280.31's general prohibition against mask mandates in schools should be considered when determining whether a particular student's request for a mask mandate as an accommodation is a reasonable one." Add.22, App.1045, R.Doc.114 at 22. To be sure, such consideration cannot override the demands of federal law. *See* Add.22-23, App.1045-46, R.Doc.114 at 22-23 ("[I]f, after considering section 280.31's general ban on mask mandates, the school district concludes that requiring masks is a reasonable modification to protect the safety of the student, then Defendants Reynolds and Lebo must permit the imposition of a mask mandate."). Thus, the declaratory judgment provides a limited role for Section 280.31: while the statute can be one factor in the mix of determining whether masking is a reasonable modification, it cannot be dispositive. State Defendants never acknowledge the portion of the trial court's ruling permitting limited consideration of Section 280.31, much less explain why it is erroneous.

Second, State Defendants repeatedly mischaracterize the relief Plaintiffs seek as requiring "universal masking." *See, e.g.*, Br. 9, 13, 27, 42, 43, 48. But, as State Defendants acknowledged below, Plaintiffs do not contend that "universal masking" is necessary to accommodate Plaintiffs' children with disabilities. App.1159,

3

R.Doc.123 at 7-9 ("We're not suggesting that the Plaintiffs, in their declaratory judgment, it certainly doesn't say there must be universal mask mandates…."). Likewise, the declaratory relief granted by the district court does not address whether—or to what extent—masking is required under federal law to address the disabilities of Plaintiffs' children.

State Defendants' procedural arguments similarly have no merit. Their argument concerning administrative exhaustion, Br. 22-31, is foreclosed by the Supreme Court's recent decision in *Perez v. Sturgis Public Schools.*, 143 S. Ct. 859, 865 (2023), and also has no merit under *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752-54 (2017). Likewise, State Defendants' standing argument fails because the injuries to Plaintiffs' children are traceable to Section 280.31, and the declaratory relief granted by the district court redresses those injuries by freeing the School District Defendants to provide reasonable accommodations to Plaintiffs if appropriate without fear of violating the state statute.

While State Defendants' grievances with the declaratory relief entered below are chimerical, the stakes for Plaintiffs are real. Before the district court granted relief, State Defendants threatened school districts that adopted mask requirements with loss of funding or accreditation—threats State Defendants have never repudiated. With the declaratory relief, school districts throughout Iowa can follow the requirements of federal disability antidiscrimination law without fear of

4

retribution, and parents of children at risk of serious health consequences should they contract COVID-19 no longer face a Hobson's choice between their children's health and their education. The decision below should be affirmed.

## STATEMENT OF THE CASE[2]

### A.    The Pandemic and Anti-Masking Debate

This litigation began during the turbulent period at the beginning of the pandemic. At that time, many school districts in Iowa had policies that required masking. App.14, R.Doc.1 at ¶ 4. This was consistent with the Iowa's Department of Education's policies, which had "adopt[ed]… CDC [Centers for Disease Control and Prevention] guidelines in all of [its] training manuals," "encourage[d] the use of cloth face coverings when feasible," and "deferred to local districts… to determine how and when" school activities could be conducted. App.153, R.Doc 17 at 6 & n.16.

At some point, the issue of mask requirements became politicized. Against this backdrop, on May 20, 2021, Governor Reynolds signed Section 280.31 into law. The statute provides:

> The board of directors of a school district, the superintendent or chief
> administering officer of a school or school district, and the authorities

---

[2]  Because the case below was decided on summary judgment, most of this statement of the case is taken from Plaintiffs' Rule 56(c) Statement of Undisputed Material Facts (App.715-720, R.Doc.88-2) and Governor Reynolds and Director Lebo's response thereto (App.1004-1008, R.Doc.99-1), as well as admissions and other statements against interest made by Defendants.

Appellate Case: 22-3338     Page: 16     Date Filed: 06/05/2023 Entry ID: 5283570

in charge of each accredited nonpublic school shall not adopt, enforce, or implement a policy that requires its employees, students, or members of the public to wear a facial covering for any purpose while on the school district's or accredited nonpublic school's property unless the facial covering is necessary for a specific extracurricular or instructional purpose, or is required by section 280.10 or 280.11 or any other provision of law.

App.716, R.Doc.88-2 ¶ 2. Section 280.31 does not delineate what "any other provision[s] of law" are encompassed in its savings clause. *Id.* ¶ 3.

By August 2021, a new Delta variant emerged, COVID-19 cases soared, hospitalizations reached the highest point for the year to date, and COVID-19 related deaths increased rapidly in Iowa and nationally. Children, many of whom were not yet eligible for vaccinations, constituted nearly a quarter of new cases. App.716, R.Doc.88-2 ¶ 4; App.1005, R.Doc.99-1. Public health and education officials—including the American Medical Association, the Infectious Disease Society of America, the Iowa Medical Society, the Iowa Chapter of the American Academy of Pediatrics, and the health departments of Iowa's three most populous counties—reiterated their calls for masking in schools. App.716-17, R.Doc.88-2 ¶ 5; App.1005, R.Doc.99-1 (admitted).

Nevertheless, Director Lebo issued guidance that Section 280.31 "prohibits a school district from adopting or enforcing a policy that requires employees, students, or the public to wear a mask while on school property." App.253, R.Doc 28-4 at 1. This blanket guidance did not reference the "any other provision of law" language

6

in the statute, nor did it suggest that any reasonable modifications would be made for students with disabilities under the ADA or the Rehabilitation Act. *Id.*

To the contrary, Director Lebo indicated that the Department of Education would enforce Section 280.31 against school districts that implemented mask requirements, warning that "school districts that choose not to follow the ban could receive citations" and "be referred to the State Board of Education," thereby risking their accreditation. App.717, R.Doc.88-2 ¶ 6; App.1005, R.Doc.99-1 (admitting quoted statement made by "a spokesperson for Director Lebo").

Similarly, on August 30, 2021, after the U.S. Department of Education announced an investigation into whether Iowa's mask ban required schools to violate federal disability law, Governor Reynolds defiantly proclaimed, "In Iowa, we will continue to support individual liberty over government mandates." App.717, R.Doc.88-2 ¶ 7; App.1005, R.Doc.99-1 (admitted).

## B. Plaintiffs Sue to Enjoin Enforcement of Section 280.3's Masking Ban

In September 2021, Plaintiffs (eleven parents on behalf of thirteen children with disabilities, as well as The Arc of Iowa on behalf of its members) brought this action against Governor Reynolds, Director Lebo, and ten school districts, seeking to enjoin enforcement of Section 280.31. App.12, R.Doc.1. Plaintiffs' children, all of whom have disabilities, have a range of medical conditions that put them at heightened risk of severe illness should they contract COVID-19. App.718,

7

R.Doc.88-2 ¶ 10; App.1006, R.Doc.99-1 (admitted); App.770, R.Doc.88-3 Ex. E ¶ 27.[3]

At the time, and still today, the CDC was clear about the risks to these children: "[C]urrent evidence suggests [that] children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease," as well as "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression," can "be at increased risk for severe illness from COVID-19." App.748, R.Doc.88-3 Ex. D ¶ 17 & n.21; App.770, R.Doc.88-3 Ex. E ¶ 27 & n.29 (citing *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Aug. 20, 2021 update)).

While certain school districts publicly indicated their desire to reimplement masking requirements for the 2021-22 school year, they did not do so because of

---

[3] Plaintiff children's conditions include Down syndrome (App.846, R.Doc.88-3 Ex. N; App.958, R.Doc.95-1 at 2), sickle cell anemia (App.846., R.Doc.88-3 Ex. N), functional asplenia (App.846, R.Doc.88-3 Ex. N), autism (App.850, R.Doc.88-3 Ex. N), cerebral palsy (App.850, R.Doc.88-3 Ex. N), asthma (App.858, 874, R.Doc.88-3 Ex. N), Williams Syndrome (App.861, R.Doc.88-3 Ex. N), heterotaxy (App.117, R.Doc.3-11 at 1; 963, R.Doc.95-1 at 7), congenital central hypoventilation syndrome (App.852, R.Doc.88-3 Ex. N), chronic respiratory problems (App.846, R.Doc.88-3 Ex. N), hypertension (App.870, R.Doc.88-3 Ex. N), heart disease (App.850, R.Doc.88-3 Ex. N), brain injury with history of strokes and epilepsy (App.855, R.Doc.88-3 Ex. N), symptomatic congenital cytomegalovirus (App.866, R.Doc.88-3 Ex. N), and compromised immune system (App.846, R.Doc.88-3 Ex. N).

Appellate Case: 22-3338     Page: 19     Date Filed: 06/05/2023 Entry ID: 5283570

Governor Reynolds and Director Lebo's public threats to schools that implemented masking. App.29-30, R.Doc.1 ¶53 & nn.49-52; App.194, R.Doc.28-1.

In the absence of masking, "some Plaintiffs pulled their medically vulnerable children out of school"; others had no choice but to send their children to school at significant risk to their health. App.718, R.Doc. 88-2 ¶ 11; App.1006, R.Doc.99-2.

Plaintiffs accordingly moved to enjoin enforcement of Section 280.31, contending that the statute's ban on masking requirements denied their children equal access to education as required by the ADA and the Rehabilitation Act.

On September 13, 2021, the district court entered a temporary restraining order (TRO) enjoining enforcement of Section 280.31. R.Doc.32. Following entry of the TRO, more than twenty-four Iowa school districts reintroduced masking, including eight of the ten district Defendants where Plaintiffs attended school. App.718-719, R.Doc.88-2 ¶ 14; App.1006, R.Doc.99-1 (admitted). Plaintiffs reported that the TRO made their children safer returning to school. App.493-94, R.Doc.48-5 ¶¶ 4, 6; App.495-96, R.Doc.48-6 ¶¶ 4,5,7; App.497, R.Doc.48-7 ¶¶ 4,6,8; App.505-06 R.Doc.48-11 ¶¶ 6,10; App.503-04, R.Doc.48-10 ¶¶ 4-6; App.510, R.Doc.48-13 ¶¶ 4-5; App.511, R.Doc.48-14 ¶¶ 3-5. On October 8, 2021, the district court granted a preliminary injunction. R.Doc.60.

Governor Reynolds and Director Lebo appealed. The School District Defendants—those dealing directly with students—did not appeal. App.685, R.Doc.61.

## C. The First Appeal

In their first appeal, Governor Reynolds and Director Lebo seemed to want it both ways. On the one hand, they told this Court that "Section 280.31 permits schools to impose to mandate the wearing of masks if it 'is required by… any other provision of law.' The statute thus doesn't prevent schools from complying with the ADA and Section 504." App.719, R.Doc.88-2 ¶ 15; App.1006, R.Doc.99-1 (admitted). On the other hand, they asserted that the ADA and the Rehabilitation Act do not "provide a basis to override this statutory product of Iowa's democratic process," App.719, R.Doc.88-2 ¶ 1; App.1006, R.Doc.99-1 (admitted), and that it would not violate these statutes to deny any request for masking as a reasonable modification, because the denial would be "because of the [State's] policy, not the individual's disability." First.App.Br. 19.

On January 25, 2022, a panel of this Court held that Plaintiffs were entitled to a preliminary injunction, but ordered the district court upon remand to narrow the injunction to apply only to the school districts where Plaintiffs' children attended school. The panel held: "A proper injunction therefore would: (1) establish that federal disability law requires mask wearing as a reasonable accommodation and

10

that Section 280.31 allows this; (2) prohibit Defendants from imposing a contrary reading of Section 280.31, or otherwise preventing, delaying, or failing to provide such reasonable accommodations; and (3) thereby ensure that Plaintiffs' schools may impose mask requirements as reasonable accommodations." *Arc of Iowa v. Reynolds*, 24 F.4th 1162, 1181, *vacated as moot and remanded*, 33 F.4th 1042 (8th Cir. 2022). The panel reasoned that "the plain meaning of Section 280.31 is that where federal law requires masks in school, Section 280.31 allows them…. Because Section 280.31 allows mask requirements to comply with the ADA or RA, it does not conflict with and is not preempted by these laws." *Id*. at 1179-80.

On May 16, 2022, the panel vacated its January 25, 2022 opinion as well as the preliminary injunction as moot, noting the availability of vaccines and lower transmission rates and stating that "the current conditions differ vastly from those prevailing when the district court addressed" the injunction. 33 F.4th at 1044. The panel noted that it took "no position on the merits of Plaintiffs' claims, which are left for future decision." *Id.* at 1045. The panel further directed "the parties and district court" to "pay particular attention to Section 280.31's exception for 'any other provision of law.'" *Id.* This direction was based on the Court's holding that, "[t]his exception unambiguously states that Section 280.31 does not apply where 'any other provision of law' requires masks. 'Any' makes 'provision of law' a broad category that does not distinguish between state or federal law." *Id.*

11

### D. The Proceedings on Remand

On remand, Plaintiffs sought to ensure that Governor and Director Lebo would enforce Section 280.31 consistent with federal disability antidiscrimination laws. At the time, confusion existed in schools in the absence of an injunction because Governor Reynolds and Director Lebo had never repudiated their prior threats to schools that imposed masking requirements. App.717, R.Doc.88-2 ¶ 8; App.1006, R.Doc.99-1 (admitted).

Plaintiffs thus asked all Defendants if they would stipulate that "the term 'other provision[s] of law' as it is used in Section 280.31 includes Title II of the Americans with Disabilities Act ('ADA') and Section 504 of the Rehabilitation Act," and "that Section 280.31 cannot be cited as a basis to deny a student's request for reasonable modification or accommodation that includes requiring others to wear masks." App.691, R.Doc.88 ¶ 2. Governor Reynolds and Director Lebo refused to agree to this proposed stipulation. *Id.* at ¶ 3. One Defendant School District agreed to this stipulation, and the others did not oppose, but did not take a position. *Id.* at ¶¶ 4-5.

Unable to reach an agreement that would provide clarity to schools, Plaintiffs sought a declaratory judgment. While many of Plaintiffs' children were now able to safely attend school with no modifications, due to vaccination, reduced COVID-19 rates, and the development of antiviral treatments, three of the Plaintiff children

(E.C., M.P., and H.J.F.R) remained at high risk if they contracted COVID-19. Their doctors testified that, given the risk to these children, including the need for ventilatory support in one case, individuals around these children should wear masks to ensure equal access to public schools. App.958-71, R.Doc.95-1,95-2,95-3. The Governor and Director Lebo did not dispute these facts. App.720, R.Doc.88-2 ¶ 20; App.1007, R.Doc.99-1. Ultimately, Plaintiffs moved for summary judgment and Defendants moved to dismiss the action. App.687-89, R.Doc.86.

On November 1, 2022, the district court granted Plaintiffs' motion for summary judgment and denied Defendants' motions to dismiss. Add.1-24, App.1024-47, R.Doc.114. Based on the fulsome record and undisputed material facts, the district court held that "under Iowa Code section 280.31, a disabled student may request a reasonable accommodation that requires masks to be worn by teachers, aides, other students, and anyone else near or interacting with the disabled student to allow the disabled student making the request to safely and readily access their school and in-person learning. Any school district receiving such a modification request must consider it just as they would any other request for a reasonable modification made under the ADA or the Rehabilitation Act." Add.22-23, App.1046-47, R.Doc.114 at 22-23. The opinion further states:

> The Court agrees with Defendants Reynolds and Lebo that section 280.31's general prohibition against mask mandates in schools should be considered when determining whether a particular student's request for a

13

mask mandate as an accommodation is a reasonable one. But if, after considering section 280.31's general ban on mask mandates, the school district concludes that requiring masks is a reasonable modification to protect the safety of the student making the accommodation request under federal disability law, then Defendants Reynolds and Lebo must permit the imposition of a mask mandate. To be clear, a school district need not determine a mask mandate is the only accommodation available, only that it is a reasonable one, which is what federal law requires and therefore section 280.31 permits.

*Id*. The court issued declaratory relief stating that Section 280.31's "other provisions of law" term "includes the ADA and Rehabilitation Act," and that Section 280.31 "cannot be cited as the only basis to deny a student's request for reasonable modification" under the ADA or the Rehabilitation Act "that includes requiring others to wear masks." Add.23-24, App.1046-47, R.Doc.114 at 23-24.

Since the November 1, 2022 order was entered, Plaintiff children M.P. and E.C. were granted modifications within their schools by Defendants Des Moines and Waterloo, respectively, requiring teachers and others around them to mask.

Governor Reynolds and Director Lebo appealed. Again, Defendant School Districts did not appeal.

## SUMMARY OF ARGUMENT

The district court properly entered declaratory relief confirming the scope and meaning of Section 280.31 in a manner consistent with this Court's previous holding. 33 F.4th at 1045. This relief was necessary in light of State Defendants'

14

continued and internally contradictory insistence that masking can never be required in schools notwithstanding Section 280.31's "savings clause." This Court should affirm.

I.    State Defendants' procedural arguments that Plaintiffs failed to exhaust administrative remedies under the IDEA and that they lack Article III standing have no merit. Their exhaustion requirement is foreclosed by *Perez v. Sturgis Public Schools*, 143 S. Ct. 859, 865 (2023), because the relief Plaintiffs sought is not available under the IDEA, and because Plaintiffs' claims pertain to equal access to schools rather than adequacy of special education, and thus fall outside the IDEA.

II.    State Defendants' standing arguments fail because each element of Article III standing is readily satisfied as this Court held in the first appeal. Specifically, State Defendants do not dispute there is an injury-in-fact. Plaintiffs' injuries are traceable to Section 280.31, and the declaratory relief Plaintiffs sought and obtained redresses those injuries by freeing school districts to provide reasonable accommodations to children with disabilities where appropriate without fear of violating Section 280.31 and incurring the draconian penalties threatened by State Defendants.

III.    State Defendants' arguments on the merits are equally wrong. Their contention that the ADA and the Rehabilitation Act do not proscribe facially neutral policies that have a discriminatory effect on persons with disabilities runs contrary

15

to decisions from the Supreme Court and every appellate court to consider the question—including this Court—as well as the text and purpose of the statutes. State Defendants' argument that "universal masking" can never constitute a reasonable accommodation is one for another case, as Plaintiffs in this case ask only that schools be able to fully consider requests for reasonable modification that involve masking. In any event, State Defendants failed to present an evidentiary record below to establish that masking constitutes a fundamental alteration or an undue burden, which would be almost impossible to do given that Iowa schools widely required masking prior to the passage of Section 280.31. And State Defendants' suggestion that reasonable accommodations required under federal law must comply with state law is squarely foreclosed by basic Supremacy Clause principles and this Court's directive interpreting the statute.

This Court should affirm.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's … grant of declaratory judgment," *Continental Insurance Company v. Daikin Applied Americas Inc.*, 998 F.3d 356, 359 (8th Cir. 2021), as well as decisions addressing motions to dismiss for failure to state a claim and lack of subject matter jurisdiction, *Metzger v. Village of Cedar Creek, Nebraska*, 370 F.3d 822, 823 (8th Cir. 2004).

16

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THE IDEA EXHAUSTION REQUIREMENT DOES NOT APPLY

Governor Reynolds and Director Lebo attempt to evade review of the merits by arguing that "Plaintiffs' failure to exhaust the administrative process required under the IDEA renders the subsequent finding and relief issued by the district court premature." Br. 22. This contravenes clear Supreme Court precedent in two independent respects. First, the relief that Plaintiffs sought—and that the district court granted—is not available under the IDEA. As the Supreme Court recently held, this alone defeats State Defendants' exhaustion argument. *See Perez v. Sturgis Pub. Schs.*, 143 S. Ct. 859, 865 (2023). Second, the district court correctly concluded that "the 'gravamen' of Plaintiffs' Complaint does not seek redress for Defendant School Districts' failures to provide Plaintiffs' children with a free and appropriate public education [FAPE]"; exhaustion is therefore not required. Add.13-14, App.1036-37, R.Doc.114 at 13-14 (citing *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 752-54 (2017)).

### A. Plaintiffs Need Not Exhaust Because They Sought and Obtained Relief That Is Not Available Under the IDEA

Governor Reynolds and Director Lebo acknowledge—as they must—that Plaintiffs need only exhaust if they are "seeking relief that is also available under" the IDEA. Br. 22 (quoting 20 U.S.C. § 1415(l)). This statutory requirement was recently emphasized by the Supreme Court in *Perez v. Sturgis Public Schools*.

17

There, the Court explained, in a case involving a student pursuing ADA claims, exhaustion is not required where the relief sought by the plaintiff is not available under the IDEA: "the question is whether a plaintiff must exhaust administrative processes under IDEA that cannot supply [the remedy] he seeks. And here, as in *Fry*, we answer in the negative." 143 S. Ct. at 865; *see Fry*, 137 S. Ct. at 754 (when an ADA or Rehabilitation Act claim's "remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required"); *Barron v. S.D. Bd. of Regents*, 655 F.3d 787, 792 (8th Cir. 2011) (rejecting an exhaustion requirement because "adequate relief likely could not have been obtained through the administrative process").

In this case, too, the answer is in the negative, for two independent reasons. First, the *substance* of the declaratory relief Plaintiffs sought and obtained could not be obtained through an IDEA hearing. Plaintiffs secured a declaratory judgment on two counts: (1) that Section 280.31's reference to "'other provision[s] of law'… includes Title II of the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act"; and (2) that Section 280.31 "cannot be cited as the only basis to deny a student's request for reasonable modification or accommodation made under Title II of the ADA or section 504 of the Rehabilitation Act that includes requiring others to wear masks." Add.23-24, App.1046-47, R.Doc.114 at 23-24.

18

Thus, the declarative relief granted by the district court concerned only the interpretation and implementation of Section 280.31.

Such relief is not available under the IDEA's administrative procedures. Rather, IDEA hearings can only address a proposal or refusal to "initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child…." Iowa Admin. Code r. 281-41.507(1)(a) (incorporating by reference Iowa Admin. Code r. 281-41.503(1)); *see also Fry*, 137 S. Ct. at 754 (finding that if an "accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. But if it is not, he cannot—even though the dispute is between a child with a disability and the school she attends"). The declaratory relief granted by the district court did not address any of these issues, which is unsurprising given that—as discussed below—Plaintiffs' claims do not pertain to special education and thus do not fall under the IDEA. Instead, the district court properly decided how Section 280.31 should be interpreted and applied— issues beyond the ken of an IDEA administrative hearing.

Second, the *scope* of relief sought by Plaintiffs and granted by the district court exceeds that available under the IDEA through the administrative hearing process. The IDEA's administrative procedures provide for relief addressing the educational needs of an individual child. *See* Iowa Admin. Code r. 281-41.513(1) (outlining proper bases for hearing decisions, all pertaining to whether "a child"

19

received or did not receive FAPE). Indeed, Governor Reynolds and Director Lebo acknowledge that the purpose of an administrative hearing is to resolve disputes between schools and families over *Individualized* Education Plans (IEPs). *See* Br. 23 (emphasis added) ("If a school and family have a dispute over the IEP, the first step is a hearing before a neutral administrative law judge…."). [4] Thus, administrative judges cannot grant statewide declaratory relief like that granted by the district court—that is, relief that could be utilized by all Iowa students with disabilities or The Arc of Iowa's members.

In short, an IDEA administrative judge can neither interpret Section 280.31 nor grant declaratory relief on a statewide basis—the sole relief that Plaintiffs obtained under the ADA and the Rehabilitation Act. Exhaustion under the IDEA— under which Plaintiffs do not seek relief—was therefore not required.

Defendants Reynolds and Lebo nevertheless contend that exhaustion was required because, they argue, the IDEA administrative procedures could provide adequate relief. *See* Br. 31 ("If after following the proper procedures the FAPE required some level of mask mandate on some teachers or students, section 280.31 allows for that in its savings clause."). But that is contradicted by State Defendants

---

[4] Likewise, both of the Eighth Circuit exhaustion cases State Defendants rely on involve claims brought on behalf of individual students. *See* Br. 24-27 (citing *Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587 (8th Cir. 2018); *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944 (8th Cir. 2017)).

themselves. They argue that any mask mandate, even a "partial" one, "imposes significant administrative burdens" and "is not a reasonable accommodation." Br. 18, 48. A declaratory judgment is therefore necessary to relieve schools from uncertainty as to their ability to require masking notwithstanding Section 280.31.[5]

The record likewise underscores why a declaratory judgment was needed to afford Plaintiffs' adequate relief. As the record shows, the State's enforcement of Section 280.31 included express threats of loss of accreditation and funding. App.717-18, R.Doc.88-2 ¶¶ 8, 16; App.1006, R.Doc.99-1 (admitted). Faced with this enforcement environment, schools were left in doubt as to whether they could engage in a reasonable modification process with Plaintiffs who sought masking requirements to accommodate their serious health needs. *See, e.g.*, App.856, R.Doc.88-3 Ex. N ¶¶ 13-14 (stating that school administrators were unwilling after Section 280.31 to grant S.V. the same modifications—involving masking of staff— that were in place during the prior school year).

The declaratory order provided something Governor Reynolds and Director Lebo were unwilling to provide: clarity on the rights of schools to employ masking

---

[5] In the first appeal, this Court rejected a similar conflicting position by Defendants. There, the Court observed that "[Defendants'] unsupported assertion that [an administrative law] judge could impose … mask mandates … contradicts their own interpretation of Section 280.31 and federal disability law." *Arc of Iowa v. Reynolds*, 24 F.4th at 1177 n.2.

where necessary to protect vulnerable students. The declaratory relief sought by Plaintiffs was thus necessary—not to dictate any particular outcome regarding an individual accommodation request—but merely to allow schools to again engage in the reasonable modification process required under federal disability law.

### B. The Essence of Plaintiffs' Claims Pertains to Equal Access to Public Schools, Not Students' Right to a Free and Appropriate Public Education

Governor Reynolds and Director Lebo contend that exhaustion is required under *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), because the purported gravamen of Plaintiffs' claim is that "their children are being denied a free and appropriate public education." Br. 28. This is wrong.

#### 1. The Gravamen of Plaintiffs' Claims Falls Outside the IDEA

Exhaustion is not required here because, contrary to Defendants' mischaracterization, Plaintiffs' claims are not based on the denial of a FAPE. Under *Fry*, to determine whether exhaustion applies, "a court should look to the substance, or gravamen, of the plaintiff's complaint," not whether a plaintiff's claim may have "educational consequences." 137 S. Ct. at 752, 756. In considering whether exhaustion is required under the IDEA, "a court should attend to the diverse means and ends of … the IDEA on the one hand, and the ADA and Rehabilitation Act (most notably) on the other." *Id.* at 755. The IDEA concerns children and special

22

education, while the ADA and Rehabilitation Act concern equal access to public institutions, including schools. *See id.* at 748-49, 755-56.

To determine whether the gravamen of a case falls within the IDEA, *Fry* directed courts to answer two questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* at 756. If the answer to both questions is yes, the IDEA is inapplicable and exhaustion is not required. *Id.*

Here, the district court properly found both *Fry* questions are readily answered in the affirmative. R.Doc.32 at 18. First, if Iowa enacted a statute identical to Section 280.31 that concerned public libraries rather than schools, Plaintiffs would experience the same risks to their health as they do here when they wanted to enter a library. Accordingly, they could bring the same claim for lack of equal access to a public facility under the ADA. *Cf. Seaman v. Virginia*, Case No. 3:22-cv-00006, 2022 WL 872023, at *318-19 (W.D. Va. Mar. 23, 2022) ("The crux of Plaintiffs' allegations is safe access to public, brick-and-mortar government buildings and not the denial of a FAPE").[6]

---

[6] State Defendants make much of the fact that the Complaint includes multiple references to the denial of access to education. Br. 27-28. But the same would be true of a lawsuit challenging a school's failure to provide ramps for disabled access,

23

Second, the same claim that Plaintiffs make here could be brought by adults with disabilities. A teacher or staff member who had a medical condition making them vulnerable to severe complications from COVID-19, and who therefore needed those around them to mask, could bring the same claims as Plaintiffs in this case, based on the denial of safe and equal access to the public school. *Cf. Seaman*, 2022 WL 872023, at *319 ("[A]n adult teacher at the school, for instance, could have posed the same grievance if the lack of masking put the adult at significantly greater risk of injury or death."). In short, the type of claims that Plaintiffs make here against Section 280.31's ban on masking are not limited to children or to education.

Where a complaint is focused on access to facilities—as here—and not to the delivery of instruction, the claim does not centrally allege the denial of a FAPE. *See, e.g.*, *Doe ex rel. K.M. v. Knox Cnty. Bd. of Educ.*, 56 F.4th 1076, 1077, 1083 (6th Cir. 2023) (student with hypersensitive hearing and misophonia requested accommodation barring students from eating food in classrooms, which Sixth Circuit held was not "instruction," and not subject to IDEA exhaustion requirement) (collecting cases); *Doe v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 683 (E.D. Pa. 2022) ("Because this case concerns Plaintiffs' alleged inability to access on-site school learning, due to the optional masking policy, at its core, it involves

---

a hypothetical that *Fry* held would not be subject to exhaustion if "its essence is equality of access to public facilities, not adequacy of special education." 137 S. Ct. at 756.

accessing the facility rather than accessing the curriculum. The case is therefore not a FAPE-based claim and no administrative exhaustion requirement applies."). The same is true here.

### 2. The Decisions State Defendants Cite Are Inapposite

The decisions Defendants cite do not support requiring exhaustion here. In *Nelson v. Charles City Community School District*, 900 F.3d 587 (8th Cir. 2018), the central issue was the "mishandling of [Plaintiff's] open enrollment application by the Charles City District when its own educational programming could not meet her needs." *Id.* at 592. In contrast, Plaintiffs' claims do not center on special educational programming or how to meet the students' educational needs. Likewise, in *J.M. v. Francis Howell School District*, 850 F.3d 944 (8th Cir. 2017), the claims were "based on the failure to implement J.M.'s IEP" and "fail[ure to] provide proper sufficient supportive services to permit J.M. to benefit from instruction." *Id.* at 949-50 (internal punctuation omitted). This case involves no comparable claims; indeed, a number of Plaintiffs do not even have an IEP. App.948, R.Doc.95 at 13; *see Moore v. Kansas City Pub. Sch.*, 828 F.3d 687, 692 (8th Cir. 2016) (concluding under *Fry* that the gravamen of complaint was not denial of a FAPE where plaintiff "did not request any change or amendment to [student's] IEP or educational placement").

*E.T. v. Paxton*, 19 F.4th 760, 767 (5th Cir. 2021), which Defendants cite, is also wanting. There, staying a preliminary injunction, the Fifth Circuit found the

25

"essential aspect of plaintiffs' claims" for masking to be "access to in-person learning," which could not be applied to facilities other than schools and could only be brought by a student. But if *E.T.* were correct, the plaintiff in *Fry* would have had to exhaust, because the disability discrimination alleged in that case also involved equal access to in-person schooling. *See Fry*, 137 S. Ct. at 758.

Moreover, *E.T.* is not even binding precedent in the Fifth Circuit because it was the decision of a motions panel on a motion for a stay pending appeal. *E.g.*, *Northshore Dev., Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988). The rule is the same in this circuit. *See In re Rodriquez*, 258 F.3d 757, 759 (8th Cir. 2001) ("Decisions by motions panels are summary in character, made often on a scanty record, and not entitled to the weight of a decision made after plenary submission." (citation omitted)).

Finally, as *Perez* makes clear, even if Plaintiffs' Complaint in this case were aimed at the denial of a FAPE (which it is not), exhaustion would not be required to the extent the relief sought and obtained by Plaintiffs was unavailable under the IDEA. Suppose a plaintiff "files an ADA action seeking both damages" for the denial of a FAPE "and the sort of equitable relief IDEA provides." *Perez*, 143 S. Ct. at 865. Because both the damages claim and the claim for equitable relief were based on the denial of a FAPE, the gravamen of this hypothetical complaint would be a claim under the IDEA. But that does not mean that the entire claim would be

26

subject to exhaustion. While a plaintiff's "request for equitable relief" may be "barred or deferred if he has yet to exhaust," *id.*, the plaintiff's claim for damages would not be subject to exhaustion under *Perez*, even though the damages are sought (as in *Perez*) for the denial of a FAPE under the IDEA.[7]

## II. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS HAVE STANDING

"To establish standing, plaintiffs must show that they: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Sarasota Wine Mkt. LLC v. Schmitt*, 987 F.3d 1171, 1177-78 (8th Cir. 2021) (internal punctation omitted). This Court in the initial appeal found that standing exists, and the same is true now.

### A. Defendants Do Not Dispute that Plaintiffs Have Suffered an Injury-In-Fact

Governor Reynolds and Director Lebo do not contest that Plaintiffs have shown an injury-in-fact. With good reason. It is settled law that parents, like Plaintiffs here, who assert "an injury to their children's educational interests and

---

[7] The defendant in *Perez* argued that this result would "frustrate Congress's wish to route claims about educational services to administrative agencies with 'special expertise' in such matters." 143 S. Ct. at 865. But the Court rejected the argument, holding that "a rational Congress might have sought to temper a demand for administrative exhaustion when a plaintiff seeks a remedy IDEA can supply with a rule excusing exhaustion when a plaintiff seeks a remedy IDEA cannot provide." *Id.*

opportunities," satisfy Article III's injury-in-fact requirement. *Liddell v. Special Admin. Bd. of the Transitional Sch. Dist.*, 894 F.3d 959, 965 (8th Cir. 2018). Put simply, "[p]arents have standing to sue when practices and policies of a school threaten their rights and interests and those of their children." *Id*. at 965-66.

## B. Plaintiffs Have Established Traceability

The district court held that "it is undisputed that Plaintiffs' alleged injuries are fairly traceable to the enactment and enforcement of Iowa Code section 280.31." Indeed, without Section 280.31, there would be no question that schools could require masks to be worn and these students be protected. As the district court noted, Defendants had conceded that "Plaintiffs' … alleged denial of education … [i]f it's caused at all, [is caused by section 280.31]." Add.10, App.1033, R.Doc.114 at 10, n.10 (quoting App. 918, R.Doc.90 at 19). Plaintiffs have therefore shown traceability because their children's injuries are caused by "the predictable effect of Government action on the decisions of third parties." Add.10, App.1033, R.Doc.114 at 10 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2552, 2566 (2019)).

Governor Reynolds and Director Lebo do not meaningfully challenge the district court's traceability analysis or contend that any of the facts supporting its holding are clearly erroneous. Instead, they assert that "[t]o the extent Plaintiffs believe a mask mandate is required by federal disability law, then their impediment to relief is not the State and it is not section 280.31." Br. 33. But that contention

28

ignores that the Governor and Director have done everything they can to muddy the waters on whether federal disability law can overcome Section 280.31's masking ban. Br. 18, 40-50. State Defendants assert that "reasonable accommodations" required by federal law "must still comply with applicable state law," i.e., Section 280.31, Br. 48, and that Section 280.31 prohibits school districts from imposing mask mandates. *See* Br. 18 (asserting that "imposing a partial or full mask mandate" "is not a reasonable modification … and fundamentally alters the State's education program as set forth in Section 280.31"). Elsewhere they claim that declaratory relief is inappropriate because Section 280.31's savings clause permits masking requirements if required by federal disability law. *See, e.g.*, Br. 32-34.

Moreover, as State Defendants admitted below (Add.18, 20, App.1041, 1043, R.Doc.114 at 18, 20), Governor Reynolds and Director Lebo have never repudiated their threats, made pursuant to Section 280.31, that schools implementing mask mandates may lose funding and accreditation. S*ee, e.g*., App.717, R.Doc.88-2 ¶¶ 6-8; App.1006, R.Doc.99-1; App.154-55, R.Doc.17 at 7-8 & n.25. They do not deny that these threats—which their brief does not mention—led Iowa schools to refuse to implement masking requirements sought by Plaintiffs. And, unlike Defendant School Districts, State Defendants have appealed the narrow declaratory relief issued by the district court, which simply restates this Court's earlier construction of

29

Section 280.31.  Plaintiffs have shown that their injuries are traceable to Section 280.31.

### C.     Plaintiffs Have Established Redressability

The district court found that Plaintiffs' injuries are likely redressable by their requested declaratory relief.  Add.10-11, App.1033-34, R.Doc.114 at 10-11.  It relied on the undisputed facts that (1) "many schools across Iowa had mask requirements prior to the enactment of section 280.31 but dropped them once the statute became effective"; and (2) "after the Court ordered the preliminary injunction, several schools once again imposed some form of mask requirements."   Add.10-11, App.1033-34, R.Doc.114 at 10-11.  The court found that "[t]hese facts demonstrate that redressability is not too 'speculative,' but rather 'likely.'"  Add.11, App.1034, R.Doc.114 at 11 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  The court therefore held that "it is likely that granting the relief requested by Plaintiffs will lead their schools to require masks of those working with or nearby Plaintiffs' children to comply with federal disability law and accommodate the children's disabilities." *Id.*

As with traceability, State Defendants cannot contend that any of the undisputed material facts on which the district court relied in finding redressability are clearly erroneous.  Instead, they suggest that redressability is absent because "[n]either the Governor nor the Director can order a specific mask mandate for each

30

Plaintiff's child."  Br. 36.  But that is the wrong standard.  To satisfy the redressability requirement, a plaintiff need only show that it will "be 'likely,' as opposed to merely 'speculative,'" that a favorable decision would redress the harm. *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)); *accord Liddell v. Special Admin. Bd. of the Transitional Sch. Dist.*, 894 F.3d 959, 966 (8th Cir. 2018) (similar).  Accordingly, when a plaintiff's "injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," "causation and redressability ordinarily hinge on the response of the… third party," and the plaintiff need only show that the third party is likely to act "in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562.  In other words, redressability exists even if the action necessary to provide redress comes from a third party, as long as such action is likely to result from the requested relief.  The facts found by the district court—which the Governor and Director do not challenge on appeal—demonstrate that this standard has been met here.  As the court held, it is "likely that granting the relief requested by Plaintiffs will lead their schools to require masks of those working with or nearby Plaintiffs' children."  Add.11, App.1034, R.Doc.114 at 11.  For similar reasons, State

Defendants err in asserting that declaratory relief was unnecessary to resolve a live case or controversy. Br. 35.[8]

Similar theories and showings of likely effect readily satisfy the requirements of standing even when, unlike here, the third party is not party to the action. *See, e.g.*, *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2566 (2019) ("Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties."); *CEI v. NHTSA*, 901 F.2d 107, 117 (D.C. Cir. 1990) (consumer organization had standing to challenge fuel-efficiency regulations based on evidence that non-party manufacturers, if given the choice, would be "substantially likely to respond to market forces" by producing larger vehicles desired by its members).

The district court's declaratory judgment clarifies the limited scope and enforceability of Section 280.31, and thereby provides Plaintiffs' schools—which have not appealed—with the ability to adopt mask requirements when they are

---

[8] Since the district court declaratory judgment order, two Plaintiffs received masking modifications in Defendant School Districts. A court of appeals evaluating subject-matter jurisdiction "may look at materials outside the pleadings." *Alberty v. U.S.*, 54 F.4th 571, 575 (8th Cir. 2022); *see also Herden v. U.S.*, 726 F.3d 1042, 1046 (8th Cir. 2013) ("We may look outside the pleadings to determine the threshold question of jurisdiction."). And an "appellate court may take judicial notice of a fact for the first time on appeal." *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983).

Appellate Case: 22-3338     Page: 43     Date Filed: 06/05/2023 Entry ID: 5283570

reasonable modifications under the ADA and Rehabilitation Act.  In so doing, it redresses the harms caused to Plaintiffs by State Defendants telling schools and school administrators that they might suffer a loss of funding and accreditation if they adopt even very limited mask mandates as reasonable modifications.[9]

The fact that the declaratory relief does not require Plaintiffs' schools to adopt masking requirements, or any other particular remedy, to address the disabilities of Plaintiffs' children does not mean such relief is "inappropriate," or that Plaintiffs' injuries are not redressable, as State Defendants contend.  Br. 34, 36, 43.  The Supreme Court has made clear that a remedy need not completely redress an injury to meet the redressability requirement.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797-801 (2021) ("[T]he ability to effectuate a partial remedy satisfies the redressability requirement.") (internal quotations and citation omitted).  Thus, relief likely to provide at least partial redress to abate the harm of even one Plaintiff is sufficient to establish that the district court had jurisdiction to resolve the dispute. *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2565 (2019) (only one plaintiff needs

---

[9]  Contrary to State Defendants' contentions (Br. 36-37), the relief afforded by the district court's declaratory judgment does not "suffer from the same flaw" as in *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015), because here the declaratory judgment redressed Plaintiffs' injury "by virtue of its effect on the defendant officials."  Specifically, the declaratory judgment nullifies State Defendants' threats that schools would suffer penalties for violating Section 280.31 if they implemented mask mandates as reasonable accommodations under the ADA and Rehabilitation Act.

33

standing). That is true here, where the district court's declaratory relief has cleared the way for Plaintiffs' school districts to provide the reasonable modifications otherwise required by federal law. *See supra* n.8.[10]

## D. There Is a Live Case or Controversy

State Defendants argue that there is no live case or controversy at this stage of the proceedings. Br. 12, 32, 35-37. That is both incorrect and inconsistent with Defendants' acknowledgment below that the declaratory judgment action was still live following this Court's May 16, 2022 order. Add.12, App.1035, R.Doc.114 at 12 (quoting *Arc of Iowa*, 33 F.4th at 1045); *see also* App.943-45, R.Doc.95 at 8-10. Indeed, during the hearing on Plaintiffs' motion for summary judgment, defense counsel admitted: "[Y]es, I agree that the declaratory judgment as made here was never litigated before. *It would be difficult to say that it is moot*." App.1133; R.Doc.123 at 28:6-8 (emphasis added); *see also* App.1129, R.Doc.123 at 24:14-17 (admitting "the Eighth Circuit did not hold the entire case was moot").

Moreover, there is a present controversy because it is undisputed that the physicians of several of Plaintiffs' children have opined that others around them

---

[10] State Defendants' citation to *One Thousand Friends of Iowa v. Mineta*, 364 F.3d 890 (8th Cir. 2004), is similarly inapposite. The declaratory relief sought in that case was moot because the project it was targeting had already been completed and thus a declaration that the review process was arbitrary and capricious could not have afforded relief. *See id.* at 893-94. In contrast, this case is not moot, as there continues to be a live controversy between Plaintiffs and State Defendants over the interpretation and implementation of Section 280.31.

should still mask, App.720, R.Doc.88-2 ¶ 20; App.725-741, R.Doc.88-3 Exs. A-C, but school districts felt they could not require this because of the Governor and Director's position that a masking requirement "is not a reasonable modification," Br. at 18, and "is not a reasonable accommodation under the ADA." *Id.* at 40; *see also, e.g.*, App.290, R.Doc.37 at 32:1-5. The district court reasonably concluded that the Defendant School Districts were confused, and this confusion was preventing them from granting requested modifications. Add.18, 22, App.1041,1045, R.Doc.114 at 18, 22.

### E. Defendants Were on Notice of Plaintiffs' Requested and Awarded Declaratory Relief

Although it has nothing to do with standing, State Defendants argue in the standing portion of their brief that the declaratory relief granted by the district court was not sought in Plaintiffs' Complaint. Br. 38-39. This claim is wrong, both factually and legally.

The declaratory relief awarded by the district court is encompassed within and consistent with the relief sought in Plaintiffs' Complaint. Add.19-20, App.1042-43, R.Doc.114 at 19-20. Plaintiffs' Complaint sought a declaration that Section 280.31 "and the Defendants' implementation thereof, violates the ADA" and "subject[s] the Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act." App.48, R.Doc.1 ¶¶ 1-2. As the district court found, "it is [Defendants'] methods of implementation [of section 280.31] that Plaintiffs [sought] to have declared

35

wrongful in their [motion for summary judgment]." Add.20, App.1043, R.Doc.114 at 20. Declaratory relief that conforms the interpretation and implementation of Section 280.31 to the requirements of federal law fits well within the relief sought in the Complaint.

But even if that weren't true, it wouldn't matter. As the district court noted, "under Rule 54(c), the 'final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'" Add.19, App.1042, R.Doc.114 at 19 (quoting Fed. R. Civ. P. 54(c)). State Defendants' citation to Rule 56(a), Br. 38, does not change the fact that Rule 54 clearly permits a court to tailor relief as appropriate under the circumstances. *See generally Baker v. John Morrell & Co.*, 382 F.3d 816, 831-32 (8th Cir. 2004) (noting that Rule 54(c) reflects a "liberal policy in favor" of equitable judgments and is reviewed for "abuse of discretion"); *Bowles v. Osmose Utilities Services, Inc.*, 443 F.3d 671, 675 (8th Cir. 2006) (affirming award of punitive damages even if not demanded in complaint). The four cases cited by State Defendants—*Winfrey*, *Crow*, *A.L.*, and *Mt. Hawley*, Br. 38-39—all concern a plaintiff requesting summary judgment on a legal theory not advanced in the complaint. *See, e.g.*, *Winfrey v. City of Forrest City, Ark.*, 882 F.3d 757, 759 (8th Cir. 2018) (affirming trial court determination that plaintiff who asserted a retaliation theory in complaint could not assert a race discrimination claim for first time in opposing summary judgment). These cases are

36

inapposite because Plaintiffs have contended since the outset of this litigation that State Defendants' enforcement of Section 280.31 to bar consideration of any masking accommodation violates the ADA (Count I), App.42-44, R.Doc.1 ¶¶ 76-85, and the Rehabilitation Act (Count II), App.44-46, R.Doc.1 ¶¶ 86-94. The declaratory relief is wholly consistent with this theory of liability. The district court properly held that Defendants had adequate notice of Plaintiffs' claims, they were not prejudiced in their defense, and awarding declaratory relief was proper. Add.19-20, App.1042-43, R.Doc.114 at 19-20.

Finally, the district court's declaratory judgment is the type of relief routinely afforded by courts pursuant to the Declaratory Judgment Act. As the court explained, "[i]n this case, it is proper to grant a declaratory judgment because it 'will serve a useful purpose in clarifying and settling the legal relations in issue' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings.'" Add.22, App.1045, R.Doc.114 at 22 (citations omitted). Indeed, State Defendants concede that "[s]chools have been forced to wrestle with the implications of a series of Court orders that present a shifting landscape for complying with state and federal law" and that "[s]tudents, parents, teachers, and the State need clarity and finality." Br. 19. That is precisely what the district court's declaratory judgment order does—it provides clarity and finality to Defendants (the State and School Districts) and Plaintiffs (disabled students and their parents) on the

37

proper scope, interpretation, and implementation of Section 280.31. It should be affirmed.

## III. THE DISTRICT COURT CORRECTLY GRANTED DECLARATORY RELIEF

The Governor and Director offer three reasons why the declaratory relief granted by the district court violates federal and/or state law on the merits. Br. 40. First, they contend that the ADA and the Rehabilitation Act do not invalidate facially neutral policies that have a discriminatory effect on persons with disabilities. Br. 40-43. Second, they argue that "universal masking" can never be a reasonable modification under these statutes. Br. 43-48. Third, they assert that any reasonable modification required by federal law must also comply with Section 280.31. Br. 48-50. These arguments are all meritless.

### A. The ADA and the Rehabilitation Act Reach Policies with Discriminatory Effects

The Governor and Director contend that no violation of the ADA or Rehabilitation Act occurs when a "neutral nondiscriminatory policy" leads to the denial of rights. Br. 40-43. This contention contravenes this Court's precedents, would upend decades of settled law, and contradicts the text and purpose of both statutes.

In *DeBord v. Board of Education*, this Court stated that "[d]isparate treatment is not the only way to prove unlawful discrimination" under Title II of the ADA and

the Rehabilitation Act. 126 F.3d 1102, 1105 (8th Cir. 1997). Rather, a plaintiff can alternatively show that a facially neutral "policy has the effect of discriminating against the disabled or the severely disabled," such as by showing that the "facially neutral policy" draws distinctions "on the basis of any trait that the disabled or severely disabled are less or more likely to possess." *Id.* That is because Congress was concerned in the ADA not just about intent, but "discriminatory effects." *Id.* at 1106. Although *DeBord* affirmed summary judgment for the defendants, it did so because the policy at issue—a ban on administering drug dosages at school that exceeded the recommended maximum in the Physicians' Desk Reference—did not have "the purpose *or effect* of discriminating against disabled students." *Id.* at 1106 (emphasis added).

This Court's decision in *Durand v. Fairview Health Services*, 902 F.3d 836 (8th Cir. 2018), confirms the point. *Durand* held that Title II and the Rehabilitation Act require public institutions and recipients of federal funding to provide an otherwise qualified disabled individual with "meaningful access to the benefit" at issue, because a principal goal of the ADA was "to remedy … discriminatory effects" from facially neutral barriers facing disabled people. *Id.* at 842 (cleaned up).

Defendants suggest that *Davis v. Francis Howell School District*, 138 F.3d 754 (8th Cir. 1998), is to the contrary, Br. 41-42, but it is not. That decision merely

Appellate Case: 22-3338     Page: 50     Date Filed: 06/05/2023 Entry ID: 5283570

relied on *DeBord* to reject a challenge to the same drug dosage policy at issue in *DeBord*. *Id.* at 756. To be sure, *Davis* quotes *DeBord*'s language about how the policy "applies to all students regardless of disability." 126 F.3d at 1105. But *Davis* doesn't question *DeBord*'s express conclusion that if such a generally applicable policy had a discriminatory effect on disabled students, the policy would violate the law. *Id.* at 1105-06.

This court's rulings in *DeBord* and *Durand* align with holdings from nine other circuits over the last 35 years recognizing that the plain language and purpose of federal anti-discrimination laws require no discriminatory intent and are concerned with discriminatory effects.[11] And as to Plaintiffs' Rehabilitation Act claim, State Defendants' contention is directly contrary to Supreme Court precedent. *See Alexander v. Choate*, 469 U.S. 287, 296-97 (1985) ("[M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a

---

[11] *Ruskai v. Pistole*, 775 F.3d 61, 78-79 (1st Cir. 2014); *Disabled in Action v. Bd. of Elections in the City of N.Y.*, 752 F.3d 189, 196-97 (2d Cir. 2014); *Nathanson v. Medical Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-04, 510 (4th Cir. 2016); *Brennan v. Stewart*, 834 F.2d 1248, 1261-62 (5th Cir. 1988); *McWright v. Alexander*, 982 F.2d 222, 228-29 (7th Cir. 1992); *Doe v. CVS Pharmacy, Inc.*, 982 F3d 1204, 1211 (9th Cir. 2020), *cert. granted*, 141 S. Ct. 2882 (2021), *and subsequently dismissed*, 142 S. Ct. 480 (2021); *Mark H. v. Lemahieu*, 513 F.3d 922, 936-37 (9th Cir. 2008); *Robinson v. Kansas*, 295 F.3d 1183, 1187 (10th Cir. 2002); *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1268-69 (D.C. Cir. 2008).

Appellate Case: 22-3338    Page: 51    Date Filed: 06/05/2023 Entry ID: 5283570

discriminatory intent."). State Defendants' failure to acknowledge—much less address—any of these cases speaks volumes.

Finally, the text of the ADA and the Rehabilitation Act also forecloses Defendants' interpretation. The ADA states that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act is materially identical. 29 U.S.C. § 794(a).[12]

Both texts focus on the impact on the disabled individual, not the intent of those behind the law or policy—which the text does not mention. That omission is telling, because "antidiscrimination laws must be construed to encompass disparate-impact claims when their text refers to the consequences of actions and not just to the mindset of actors, and where that interpretation is consistent with statutory purpose." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 533 (2015); *see also Tennessee v. Lane*, 541 U.S. 509, 527 (2004) (holding that "by reason of" encompasses impacts of facially neutral policies like the absence of interpreters).

---

[12] "No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794.

Appellate Case: 22-3338      Page: 52      Date Filed: 06/05/2023 Entry ID: 5283570

Both statutes also include other provisions confirming that they reach policies with discriminatory effect. The ADA's findings and purpose section explains that:

> [I]ndividuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.

42 U.S.C. § 12101(a). Every item but the first involves meaningful access, discriminatory effect, or a reasonable modification. And Congress's stated goal was to "address" the entire array of identified discrimination. 42 U.S.C. § 12101(b).

As for the Rehabilitation Act, Section 794(a) requires "significant structural alterations to … existing facilities" to avoid discrimination, except in the limited circumstances exempted by Section 794(c). As the Supreme Court has found, given that "elimination of architectural barriers was one of the central aims of the Act … yet such barriers were clearly not erected with the aim or intent of excluding [persons with disabilities]," the Rehabilitation Act clearly "rectif[ies] the harm resulting from action that discriminated by effect as well as by design." *Alexander*, 469 U.S. at 297.

In short, both the ADA and the Rehabilitation Act address facially neutral policies that have a discriminatory effect on persons with disabilities in denying

42

them equal access to public programs. State Defendants' contrary arguments should be rejected.

**B. Masking Can Be a Reasonable Modification Under Federal Law**

Even if the ADA and the Rehabilitation Act did not reach discriminatory effect, both statutes separately require covered institutions to make "reasonable modifications," also known as "reasonable accommodations," to enable equal access by people with disabilities. 42 U.S.C. §§ 12131(2)-12132. Nevertheless, State Defendants argue that "[a] universal mask mandate is not a reasonable modification." Br. 43. This contention is meritless, for multiple reasons.

To begin with, State Defendants attack a straw man. Plaintiffs do not contend, and the district court order does not hold, that "universal masking" is required by federal law in all circumstances, that such a requirement is always necessary to accommodate Plaintiffs' children with disabilities, or that the ADA and Rehabilitation Act require "every other employee and student in the school" to mask. Br. 46. Indeed, the district court called State Defendants out for this precise mischaracterization, and their counsel conceded that the court was correct. App.288, R.Doc.37 at 30:13-14 ("[Y]ou are correct that they don't state what I just said"); App.1159, R.Doc. 123 at 54:7-9 ("We're not suggesting that Plaintiffs, in their declaratory judgment, it certainly doesn't say there must be universal mask mandates").

43

The district court's order does not require any school to impose a mask mandate, universal or otherwise, but instead merely enables schools to consider whether a masking requirement would be a reasonable modification and to calibrate any masking requirements to account for individual fact-specific circumstances. For that reason, the issue State Defendants raise—whether universal masking could ever be required under federal law—is not presented by this appeal. The degree to which mask requirements are reasonable modifications under federal law should be resolved in a case that squarely presents the issue in a specific, factual context, as opposed to review of an order that (as State Defendants concede) only "implicitly" raises the issue. Br. 43.[13]

---

[13]  State Defendants cite to materials not in the record, Br. 34 n.3, in an effort to suggest that a masking requirement could never be a reasonable accommodation. But, while State Defendants point to the Cochrane Review for the proposition that masks don't work, Cochrane's editor-in-chief has stated: "Many commentators have claimed that a recently-updated Cochrane Review shows that 'masks don't work,' which is an inaccurate and misleading interpretation." Karla Soares-Weiser, Editor-in-Chief, Cochrane Library, *Statement on 'Physical Interventions to Interrupt or Reduce the Spread of Respiratory Viruses' Review*, Cochrane (Mar. 10, 2023), https://www.cochrane.org/news/statement-physical-interventions-interrupt-or-reduce-spread-respiratory-viruses-review. Other commentators have reported on the efficacy of masking. Zeynep Tifekci, Opinion, *Here's Why the Science Is Clear That Masks Work*, N.Y. Times (Mar. 10, 2023), https://www.nytimes.com/2023/03/10/opinion/masks-work-cochrane-study.html. And the guidance from the CDC cited by Plaintiffs' unrebutted experts below, App.750, R.Doc.88-2 ¶ 22, App.772, R.Doc.88-2 ¶ 32, continues to provide that "[s]chools with students at risk for getting very sick with COVID-19 must make reasonable modification or accommodations when necessary to ensure that all students, including those with disabilities, are able to access in-person learning. Schools might need to require masking in settings such as classrooms or during activities to protect students with immunocompromising

44

State Defendants also present the meritless claim that permitting school districts to make reasonable modifications under federal law involving mask mandates "fundamentally alters the nature of the educational program established by the State." Br. 45. The burden to show fundamental alteration lies with the public entity in question. *Olmstead v. L.C.*, 527 U.S. 581, 592 (1999) (discussing 28 C.F.R. § 35.130(b)(7)); *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1988) (noting that establishing a fundamental alteration or undue burden is an affirmative defense). State Defendants offered no evidence below, nor have they supplied any explanation here (beyond conclusory assertion) as to how the provision of public education would be fundamentally altered by masking policies deemed to be reasonable modifications. Nor have they made any showing that masking requirements adopted by Iowa schools prior to the enactment of Section 280.31 or during the pendency of the injunction in this case fundamentally altered education. Indeed, even State Defendants concede (contradicting their simultaneous argument that masking is never permissible) that "limited masking of teachers or students while interacting closely with" Plaintiffs' children may sometimes be required by federal law. Br. 47. It is therefore no surprise that the district court found that "[p]ermitting schools to

---

conditions or other conditions that increase their risk for getting very sick with COVID-19…." *Operational Guidance for K-12 Schools and Early Care and Education Programs to Support Safe In-Person Learning*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-childcare-guidance.html (last updated Oct. 5, 2022).

Appellate Case: 22-3338     Page: 56     Date Filed: 06/05/2023 Entry ID: 5283570

impose mask mandates … would not fundamentally alter the nature of the services that a school provides." Add.15, App.1038, R.Doc.114 at 15.[14] Tellingly, School District Defendants, charged with administering education, have not appealed this ruling.

Finally, there is no merit to Defendants' argument that permitting schools to impose masking as a reasonable modification impermissibly "voids the Legislature's policy decision to take the highly contentious and emotional issue of masks in schools from the responsibility of local schools so that local leadership could devote their time to other important concerns." Br. 45. As this Court's prior decision held,

---

[14] The Governor and Director's argument that masking mandates impose undue administrative and legal costs or impinge on the rights of third parties are similarly meritless. Br. 45-46. Again, they introduced no evidence of such costs below. And, in all events, courts have regularly permitted schools to implement health requirements that intrude on individuals' rights, *see, e.g.*, *Jacobson v. Massachusetts*, 197 U.S. 11, 16 (1905); *Boone v. Boozman*, 217 F. Supp. 2d 938, 954 (E.D. Ark. 2002), and Iowa schools routinely impose requirements on students, teachers, and visitors to facilitate functioning and equitable learning environments. Iowa Code § 139A.8(2)(b)-(e) (immunizations); Iowa Admin. Code r. 641-7.6 (same). Reasonable accommodations can at times impose burdens on third parties, including burdens far more significant than wearing a mask—for example, permitting an employee whose health requires it to not work night or weekend shifts may be a reasonable accommodation, even though such an accommodation would impose a burden on other employees who had to cover those shifts. *See, e.g.*, *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 122 (2d Cir. 2004).

Section 280.31's savings clause subordinates—as it must—the state's anti-masking policy to the demands of federal law.  *See* 33 F.4th at 1045.[15]

## C.  Reasonable Modifications Under Federal Law Need Not Comply with Section 280.31

The Governor and Director argue that assuming masking requirements may constitute reasonable modifications, "reasonable accommodations must still comply with applicable State law."  Br. 48.  They seem to suggest that state law defines the boundaries of what the ADA and Rehabilitation Act require, which is tantamount to arguing that the federal disability law is subject to restriction by the Iowa legislature.

This is foreclosed by the Supremacy Clause.  *See Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013) ("We conclude that the ADA's reasonable modification requirement contemplates modification to state laws, thereby permitting preemption of inconsistent state laws, when necessary to effectuate Title II's reasonable modification provision."); *Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494, 508-09 (4th Cir. 2016) ("The Supreme Court has held that the ADA's Title II … trumps state regulations that conflict with its requirements. As the Sixth Circuit has put it, '[r]equiring public entities to make changes to rules,

---

[15]  The fact that "disability interests rise on both side[s] of the mask debate," Br. 46-47, merely bolsters Plaintiffs' case: where some students cannot wear masks for medical reasons, they must rely on others' behavior to stay safe.  And one of the Plaintiffs, unable to tolerate a mask, made precisely such a request.  App.727, R.Doc.88-3 Ex. A.

policies, practices, or services is exactly what the ADA does.'" (internal citations omitted)). Moreover, this Court has made clear that the statutory language "unambiguously states that Section 280.31 does not apply where 'any other provision of law' requires masks" and that "any other provision of law" includes federal disability law. *See Arc of Iowa v. Reynolds*, 33 F.4th at 1045.[16]

State Defendants also assert that "[t]he ADA does not require public schools to provide [] students with disabilities the accommodation of her choice." Br. 48. This has nothing to do with State Defendants' state-law claim, but in any event does not conflict with Plaintiffs' position. A modification is a viable alternative under federal disability law only if it is nonetheless *effective*. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations."); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences*, 804 F.3d 178, 189 (2d Cir. 2015) ("The

---

[16] In the same vein, the Court should reject Defendants' passing argument that interpreting the ADA and the Rehabilitation Act as the district court did "raises significant constitutional concerns about the intrusion of the federal government into the public health and education domain of the States." Br. 18. The text of the ADA and Rehabilitation Act expressly covers activities of "State and local government[s]," including specifically a "local educational agency" or "school system." *See, e.g.*, 42 U.S.C. § 12131(1)(A); 29 U.S.C. § 794(b)(1)-(2). The Supreme Court has held that Title II was intended to and does apply directly to states and local governments to address "unequal treatment of persons with disabilities by States and their political subdivisions." *Tennessee*, 541 U.S. at 526; *U.S. v. Georgia*, 546 U.S. 151 (2006). And, needless to say, the nation's schools are subject to the requirements of federal law. *See, e.g.*, *Cooper v. Aaron*, 358 U.S. 1, 17 (1958).

48

accommodation need not be 'perfect' or the one 'most strongly preferred' by the student-plaintiff, but it still must be 'effective[.]'" (citation omitted)). Thus, in circumstances where a student seeks a modification involving masking, and an alternative accommodation would also be effective in facilitating equal access for that student, their school may grant the non-masking modification. But, as this Court previously held, because of Section 280.31's savings clause, the statute does not prevent schools from imposing reasonable modifications that include masking under the ADA and Rehabilitation Act.

State Defendants' argument that "[i]f reasonable accommodations must adhere to internal company policies, it follows that they must also comply with State law," Br. 49, gets them nowhere because that is simply not the law. The cases they rely on, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), and *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), do not hold that reasonable accommodations can be trumped by internal company policies—rather, each held that the requested accommodation in question was *not* a reasonable one under the circumstances because it would impose unreasonable hardship on the employer. *See Barnett*, 535 U.S. at 403-06 (finding that seniority systems are integral to "employee-management relations" and "provide[] important employee benefits by creating, and fulfilling, employee expectations of fair, uniform treatment," but that a plaintiff may still show "special circumstances that make an exception from the seniority system reasonable

49

in the particular case"); *Kirkingburg*, 527 U.S. at 570-78 (finding that employer was not required to deviate from "general acuity standards" structured to ensure safe operation of commercial motor vehicles and thereby protect public safety).[17] These cases cast no doubt on the simple Supremacy Clause principle that where state law conflicts with federal law, federal law must prevail.

As applied here, State Defendants' argument would suggest that if under particular circumstances federal disability law required masking as a reasonable modification, Section 280.31 would preempt. This cannot be the law, and Defendants know it, as made clear by their repeated efforts to use the savings clause as an escape hatch. The fundamental argument Plaintiffs raise is that Section 280.31 cannot prevent a school district from abiding by federal disability law and granting a reasonable modification that involves some form of a masking requirement, and Defendants' unsupported arguments to the contrary merely underscore the necessity of declaratory relief on this point.

---

[17] State Defendants also quote *Office of Senate Sergeant at Arms v. Office of Senate Fair Employment Practices* as follows: "A qualified individual with a disability is thus entitled to a reasonable accommodation, absent any statutory qualification that may limit the employer's duty to provide such an accommodation." *See* Br. 49 (quoting 95 F.3d 1102, 1107 (Fed. Cir. 1996)). The context for this quote reveals just how off the mark Defendants' argument is; the court was assessing what was required under the Government Employee Rights Act, and the language "absent any statutory qualification that may limit the employer's duty to provide such an accommodation" was not referring to state or local statutory law—it was referring to the ADA itself. *See Off. of Sen. Sergeant at Arms*, 95 F.3d at 1107.

# CONCLUSION

This Court should affirm the decision below.

Dated: June 5, 2023

Respectfully submitted,

*s/ Rita Bettis Austen*

Shefali Aurora
Rita Bettis Austen
AMERICAN CIVIL LIBERTIES
  UNION OF IOWA FOUNDATION
505 Fifth Avenue, Suite 808
Des Moines, IA 50309-2316
(515) 243-3988
shefali.aurora@aclu-ia.org
rita.bettis@aclu-ia.org

Catherine Johnson
Cynthia A. Miller
DISABILITY RIGHTS IOWA
666 Walnut Street, Suite 1440
Des Moines, IA 50309
(515) 278-2502
cmiller@driowa.org
cjohnson@driowa.org

Shira Wakschlag
ARC OF THE UNITED STATES
1825 K Street, NW, Suite 1200
Washington, DC 20006
(202) 534-3708
wakschlag@thearc.org

Jim T. Duff
Thomas J. Duff
DUFF LAW FIRM, P.L.C.
4090 Westown Parkway, Suite 102
West Des Moines, IA 50266
(515) 224-4999
jim@tdufflaw.com
tom@tdufflaw.com

*s/ John A. Freedman*

John A. Freedman
Anthony J. Franze
Tara L. Williamson
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
(202) 942-5000
john.freedman@arnoldporter.com
anthony.franze@arnoldporter.com
tara.williamson@arnoldporter.com

Steven L. Mayer
ARNOLD & PORTER
  KAYE SCHOLER LLP
10th Floor, Three Embarcadero Ctr.
San Francisco, CA 94111-4024
(415) 471-3100
steve.mayer@arnoldporter.com

Louise Melling
Arijeet Sensharma
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2637
lmelling@aclu.org
asensharma@aclu.org

Susan Mizner
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
(646) 421-9387
smizner@aclu.org

*Counsel for Plaintiffs-Appellees*

51

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f), the brief contains 12,176 words.

2.      This brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

3.      Pursuant to Eighth Circuit Local Rule 28A(h), undersigned counsel hereby certifies that the brief has been scanned for viruses and that the brief is virus-free.

*s/ Rita Bettis Austen*
Rita Bettis Austen

Appellate Case: 22-3338    Page: 63    Date Filed: 06/05/2023 Entry ID: 5283570

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*s/ Rita Bettis Austen*
Rita Bettis Austen

Appellate Case: 22-3338    Page: 64    Date Filed: 06/05/2023 Entry ID: 5283570